IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **TIANNA SHOEMO-FLINT**, | ) Case No. 3:22-cv-1113 |
| Plaintiff, | ) Magistrate Judge Darrell A. Clay |
| vs. | ) |
| **CEDAR FAIR, L.P.**, | ) **JOINT MOTION FOR APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT** |
| Defendant. | ) |

Plaintiff Tianna Shoemo-Flint ("Plaintiff") and Defendant Cedar Fair, L.P. ("Defendant") (collectively, the "Parties") respectfully move the Court for an Order approving their Fair Labor Standards Act ("FLSA") settlement. The settlement was reached by experienced wage and hour counsel during arms-length, good faith negotiations and facilitated by a third-party neutral. The following documents are submitted for the Court's approval:

> **Exhibit 1**: Collective Action Settlement Agreement and Release (the "Agreement"), along with its Exhibit A (Claim Form), Exhibit B (list of Eligible Settlement Participants), and Exhibit C (Notice of Settlement);
>
> **Exhibit 2**: Declaration of Hans A. Nilges ("Hans Dec.");
>
> **Exhibit 3**: Plaintiff declarations; and,
>
> **Exhibit 4**: Proposed Order Approving Settlement.

In support of this Joint Motion, the Parties state as follows:

## I. STATEMENT OF FACTS

### A. Factual and Procedural Background.

On June 24, 2022, Plaintiff filed her collective and class action Complaint (the "Action"). In the Action, Plaintiff asserted claims against Defendant, on behalf of herself and others similarly situated under the Fair Labor Standards Act ("FLSA") and Article II § 34a of the Ohio

Constitution. (ECF #1). On September 7, 2022, Plaintiff filed a First Amended Complaint in the Action. (ECF #8). The Action alleges that Defendant violated the FLSA and Ohio law by paying the Plaintiff and others similarly situated at a tip-credit rate for all time worked, including preparing food, cleaning, and tasks related to restaurant opening and closing, and other miscellaneous tasks that had no relation to tip producing work, and for side work, or tip-supporting work, that exceeded 30 minutes at a time or exceeded 20% or more of the employee's work time.

On September 21, 2022, Defendant filed its Answer to the First Amended Complaint in which it denied all of Plaintiff's material allegations and denied liability for the claims asserted. (ECF #9). On September 21, 2022, Defendant also filed a Motion to Strike Class and Collective Allegations Pursuant to Fed. R. Civ. Proc. 23(d)(1)(D) and 29 U.S.C. § 216(b). (ECF #10). On June 28, 2023, the Court granted Defendant's Motion to Strike Class and Collective Action Allegations. (ECF #14, 15).[1]

To avoid the burden, expense, risks and uncertainty of litigation, the Parties agreed to engage in settlement negotiations. (Agreement at ¶ 5; ECF # 21).As part of the negotiations, Defendant produced certain time and pay data for the putative collective. Plaintiff's Counsel constructed a damages model using the produced data, which was shared with Defendant's Counsel. The model served as a basis of negotiations. After good faith, arms' length negotiations, the Parties reached an agreement. (Nilges Dec. at ¶ 9). The terms of the Parties' agreement are embodied in the attached **Exhibit 1**.

---

[1] On July 13, 2023, Plaintiff filed Permission for Leave to Appeal the Court's Order granting Defendant's Motion to Strike Class and Collective Action Allegations (the "Appeal"). The Appeal is still pending. (Appeal No. 23-0308).

2

B.     **Summary of the Settlement.**

The Settlement includes no more than 111 current and former hourly, non-exempt servers employed by Defendant at any time from April 24, 2019, through December 30, 2022. (Agreement at ¶ 16).

The total settlement amount is **$65,000.00**, which includes: (1) all Settlement Awards; (2) any Service Award approved by the Court; (3) all Plaintiff's Counsel's attorneys' fees and litigation expenses approved by the Court; and (4) the Settlement Administrator's costs. In addition, Defendant will make all required employer contributions with respect to any portions of the Settlement Awards under Internal Revenue Service ("IRS") Form W-2, and these contributions are not included within the Global Settlement Fund. (*Id*. at ¶ 17).

For purposes of Settlement, the Parties agree that Plaintiff and the Eligible Settlement Participants are similarly situated under 29 U.S.C. § 216(b) of the FLSA. (*Id*. at ¶ 31). A Notice of Settlement will be sent to the Eligible Settlement Participants, along with a Claim Form to join the Settlement. (*Id*. at ¶¶ 12, 19, 40). Those who join the Settlement will become Claimants and receive settlement payments and, in exchange, they will release the Released Parties from the Released Claims for the Release Period, as outlined in the Agreement. (*Id*. at ¶¶ 21, 56).

After deducting Service Award, attorneys' fees, litigation costs, and settlement administration costs, the remaining amount will be distributed to Claimants according to their respective *pro* rata share of the Net Settlement Fund, calculated by the number of workweeks each Claimant worked during the Covered Period in comparison to the total number of workweeks worked by all Eligible Settlement Participants during the Covered Period. The minimum Settlement Award will be Twenty Dollars ($20.00). (Agreement at ¶ 25).

The Settlement provides for a Service Award of **$750.00** to Plaintiff, and **$500.00** for Angel Hernandez ("Hernandez"), for their services in bringing and prosecuting the Action. (Agreement

at ¶¶ 26, 34). Plaintiff and Hernandez provided substantial time and effort in communicating with Plaintiff's Counsel during the prosecution of the Action and throughout negotiations. (Nilges Dec. at ¶ 15). Defendant does not contest this application. (Agreement at ¶34).

## II. The Court should grant FLSA approval.

The Settlement is subject to approval by the Court pursuant to § 216(b) of the FLSA. Court approval is warranted on all scores.

### A. The Seven-Factor Standard is satisfied.

The court presiding over an FLSA action may approve a proposed settlement of the action under the FLSA "after scrutinizing the settlement for fairness." *Landsberg v. Acton Ents., Inc.*, 2008 WL 2468868 at *1 n.1 (S.D. Ohio June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353–55 (11th Cir.1982) (the court should determine whether the settlement is "a fair and reasonable resolution of a bona fide dispute") (citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8 (1946))).

As a district court in the Sixth Circuit has observed, "[t]he need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'" *Crawford v. Lexington-Fayette Urban County Gov't*, No. 06-299-JBC, 2008 U.S. Dist. LEXIS 90070, at *13 (E.D. Ky. Oct. 23, 2008).

Here, Settlement satisfies the seven factors used by the Sixth Circuit when evaluating class/collective action settlements: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir.2007) (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th

4

Cir.1992); *Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir.1983)), *Crawford*, 2008 WL 4724499 at *3.

    **1.**  **No indicia of fraud or collusion exists**.

Plaintiff's Counsel and Defendant's Counsel have extensive experience litigating FLSA claims, including claims for unpaid minimum wages, and each were given the opportunity to assess the merits of the Parties' claims and defenses, as well as the potential damages at issue in this case. (Nilges Dec. at ¶ 2-6, 10). The Parties contested the issues early, and Defendant continues to deny any wrongdoing. (ECF No. 9; Agreement at ¶¶ 4, 27).

Agreement was achieved only after arm's-length, good faith negotiations. Notwithstanding settlement, the Parties continue to disagree as to whether any wages are owed, whether there was a minimum wage violation under FLSA or Ohio law, whether a two- or three- year statute of limitations was applicable under the FLSA, whether liquidated damages are recoverable under the FLSA, and whether the matter could be maintained on a collective/class basis. (Nilges Dec. at ¶11). As such, there are no indicia of fraud or collusion.

    **2.**  **The complexity, expense, and likely duration of continued litigation favor approval**.

The policy favoring the settlement of collective actions and other complex cases applies with particular force here. Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming. *Brent v. Midland Funding, LLC,* No. 3:11 CV 1332, 2011 U.S. Dist. LEXIS 98763, at *43 (N.D. Ohio Sep. 1, 2011) (Aug. 17, 2018) ("Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them.") (further citation omitted).

If this case had not settled, the Parties would be required to engage in costly litigation and discovery, such as written discovery, depositions, and possible site inspections and time-studies.

Settlement, on the other hand, provides substantial relief to the Claimants promptly and efficiently, and amplifies the benefits of that relief through the economies of collective resolution. (Nilges Dec. at ¶ 12).

### 3. The amount of discovery engaged in by the Parties.

The Parties engaged in substantial investigation and analysis before and while negotiating the Settlement. Specifically, Defendant produced certain time and pay data for the putative collective. Plaintiff's Counsel constructed a damages model using the produced data, which was shared with Defendant's Counsel. (*Id.* at ¶ 9). Both sides are represented by competent and skilled wage and hour attorneys. (*Id.* at ¶¶ 2-6, 10). During negotiations, Counsel argued vigorously for their respective positions, and disputes remain, including whether Defendant was liable, whether any wages are owed, whether liquidated damages under the FLSA are recoverable, whether Defendant acted willfully under the FLSA, whether the matter could proceed on a collective/class basis, and to what extent Plaintiff could prove damages at trial, if any. (*Id.* at ¶ 11). Accordingly, this factor supports settlement approval.

### 4. The likelihood of success on the merits.

Settlement represents a compromise of disputed claims. Specifically, the Action alleges that Defendant violated the FLSA and Ohio law by not paying the lawful minimum wage to its servers. Specifically, the Action alleges that Defendant paid Plaintiff and others similarly situated at a tip-credit rate for all time worked, including preparing food, cleaning, and tasks related to restaurant opening and closing, and other miscellaneous tasks that had no relation to tip producing work, and for side work, or tip-supporting work, that exceeded 30 minutes at a time or exceeded 20% or more of the employee's work time. On the other hand, Defendant disputes the asserted claims and raised a number of defenses in its Answer and during negotiations.

If this case did not settle, it is possible that the Claimants will receive no compensation or, if they do receive compensation, it would be after protracted litigation, likely also involving appeals. By settling the case at this relatively early stage of the litigation, the Parties and Claimants bypass the inherent risks of litigation and achieve finality on this matter. (*Id.* at ¶ 12). Here, the total settlement amount equates to payment of all alleged unpaid minimum wages from engaging in approximately 30% untipped and related work, including liquidated damages, which supports Plaintiff's Counsel's strong belief that the settlement is fair, reasonable, and in the best interests of the Eligible Settlement Participants. (*Id.* at ¶ 13).

5. **The opinion of Plaintiff's Counsel favors approval**.

"The recommendation of Plaintiffs' Counsel, skilled in class actions and corporate matters, that the Court should approve the Settlement is entitled to deference." *Granada Invs., Inc. v. DWG Corp.*, 823 F. Supp. 448, 453 (N.D. Ohio 1993); and *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019, at *11 (S.D. Ohio Aug. 17, 2018) (citing *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983)).

Here, Plaintiff's Counsel is highly experienced in wage-and-hour collective and class actions. At all times, they have acted in good faith and vigorously advocated in the best interests of the Plaintiff and the other Eligible Settlement Participants. And, as outlined above, Plaintiff's Counsel is confident that the settlement is fair, reasonable, and in the best interests of the Eligible Settlement Participants. (Nilges Dec. at ¶ 13). Accordingly, this factor favors approval of the settlement.

6. **The reaction of absent collective members**.

Settlement provides clear and easy to understand notice of the settlement and provides for 45 days by which Eligible Settlement Participants can join. (Agreement at ¶¶ 19, 41). Additionally, unlike Rule 23, participants must affirmatively join, and the Parties have agreed that the Court will

7

retain jurisdiction over performance of the Settlement. Additionally, Plaintiff's Counsel thoroughly discussed the settlement with Plaintiff, who likewise agrees that the settlement is fair, reasonable, and in the best interests of the Eligible Settlement Participants. (Nilges Dec. at ¶ 14).

Further, Plaintiff obtained declarations from both current party Plaintiffs, who express that they are happy that this matter is resolved and expect that proceeds will benefit them and their families, and that they urge the Court to approve the settlement. (**Exhibit 3**, at ¶¶ 2, 4).

       7.       **The public interest**.

"Public policy generally favors settlement of class action lawsuits." *Wright*, 2018 U.S. Dist. LEXIS 140019, at *13; and *Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 U.S. Dist. LEXIS 65657, at *11 (N.D. Ohio Mar. 26, 2019) (quoting *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007)). Like in *Wright*, "the settlement confers immediate benefits on the Settlement collective, avoids the risks and expense in further litigation, and conserves judicial resources." *Id*.

      **B.**      **The Settlement distributions are fair, reasonable, and adequate**.

In addition to evaluating the seven factors discussed above, the Court must also "ensure that the distribution of the settlement proceeds is equitable." *See e.g.*, *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, at *15 (N.D. Ohio Mar. 8, 2010); and *Feiertag v. DDP Holdings, LLC*, No. 14-CV-2643, 2016 U.S. Dist. LEXIS 122297, at *18 (S.D. Ohio Sep. 9, 2016) (citations omitted).

       1.       **The individual payments are reasonable and adequate.**

Each Eligible Settlement Participant will receive a *pro rata* share of the Net Settlement Fund using the formula set forth in the Agreement, based on the number of workweeks each Eligible Settlement Participant worked. This ensures that each Eligible Settlement Participant is compensated according to their alleged potential damages, and is treated equitably in relation to

all other Eligible Settlement Participants. The *pro rata* allocations "ensures an equitable distribution of settlement proceeds that is directly tied to the claims and harm allegedly suffered by the settlement class members and will provide them with a proportionate share of the settlement funds." *Satterly v. Airstream, Inc.*, No. 3:19-cv-32, 2020 U.S. Dist. LEXIS 210868, at *22 (S.D. Ohio Sep. 25, 2020).

Additionally, the total settlement amount equates to payment of all alleged unpaid minimum wages from engaging in approximately 30% untipped and related work, including liquidated damages. Accordingly, and consistent with the opinion of Plaintiff's Counsel, payments are fair, reasonable, and adequate. (Nilges Dec. at ¶ 13). *See e.g., Ransom v. Burrows Paper Corp.*, No. 2:20-cv-3824, 2022 U.S. Dist. LEXIS 10638, at *4 (S.D. Ohio Jan. 18, 2022) (finding that a recovery of 42% of alleged overtime damages is an "excellent result"). Thus, the Settlement results in a substantial recovery and supports the finding that the individual payments are reasonable and adequate.

### 2. The Service Award is proper and reasonable.

The Agreement provides for a Service Award of **$750.00** to Plaintiff, and **$500.00** for Hernandez, in recognition of, and in consideration for, their substantial assistance rendered to Plaintiff's Counsel and in pursuing the rights of all Eligible Settlement Participants. Courts routinely approve service awards to plaintiffs in class and collective action litigation, because service awards "are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Barnes*, 2019 U.S. Dist. LEXIS 65657, at *18, and *Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645, at *21 (S.D. Ohio Dec. 3, 2019) (quoting *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003)). Service awards are meant to "compensate Plaintiffs for the services they provided

and the risks they incurred during the course of the class action litigation." *Dillworth*, 2010 U.S. Dist. LEXIS 20446, at *7.

Here, Plaintiff and Hernandez provided substantial time and effort in communicating with Plaintiff's Counsel during the prosecution of the Action and throughout negotiations. Plaintiff also put her name on the line, filing a lawsuit on the public docket, and taking a risk of potentially being "black-listed." (Nilges Dec. at ¶ 15). Defendant does not contest this application. (Agreement at ¶34).

### 3. The attorneys' fees to Plaintiff's Counsel are proper and reasonable.

After the Court has confirmed that the terms of settlement are fair to the Plaintiff, it may review the Agreement as to the provision of fees and costs to Plaintiff's Counsel. The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. §216(b).

In *Fegley v. Higgins*, the Sixth Circuit held that the FLSA's mandatory attorney fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied*, 513 U.S. 875 (1994) (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G&M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir. 1984)).

The Agreement provides a payment of attorneys' fees to Plaintiff's Counsel in the amount of one-third (1/3) of the total settlement amount, or **$21,666.67**. "The Sixth Circuit has approved a court's use of the percentage-of-the-fund method to determine a reasonable attorney's fee from a common fund settlement." *Satterly v. Airstream, Inc.*, S.D. Ohio No. 3:19-cv-32, 2020 U.S. Dist.

10

LEXIS 210868, at *28 (Sep. 25, 2020) (citing *Rawlings v. Prudential Bache Prop., Inc.*, 9 F.3d 513, 515-16 (6th Cir. 1993)). Indeed, the "percentage of the fund has been the preferred method for common fund cases, where there is a single pool of money and each class member is entitled to a share…." *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 789 (N.D. Ohio 2010). "In FLSA collective actions in Ohio, courts have almost uniformly awarded attorney's fees that constituted one-third of the fund." *Carr v. Bob Evans Farms*, N.D. Ohio No. 1:17-CV-1875, 2018 U.S. Dist. LEXIS 228221, at *10-11 (July 27, 2018); *see also, Osman v. Grube, Inc.*, N.D. Ohio No. 3:16-cv-00802, 2018 U.S. Dist. LEXIS 78222, at *6 (May 4, 2018) ("One-third of the common fund is a reasonable attorneys' fee award and has been approved in similar FLSA collective actions in this judicial district.") (Internal citation omitted).

This conclusion was reiterated in *Harsh v. Kalida Mfg.*, N.D. Ohio No. 3:18-cv-2239, 2021 U.S. Dist. LEXIS 175869, at *20 (Sep. 13, 2021). In *Harsh*, the Court held that while a Court can utilize either the percentage-of-the-fund or the Lodestar approach to determine whether an award of attorneys' fees is reasonable, the percentage-of-the-fund approach is more appropriate in class and collective actions, as it "rewards counsel for success and penalizes it for failure." *Id.* at *19-20. The Court further noted that the Lodestar method was more appropriate in wage and hour cases that "involve relatively small claims and therefore small amounts of damages in question," because "counsel for employees will inevitably be required to expend substantial resources and time, sometimes accruing fees several times greater than the value of damages in the case." *Id.* at *20. In contrast, in cases involving a common settlement fund the Court found that it "sees no compelling reason, let alone any reason, to deviate from" a request for one-third of the fund. *Id.*

Further, Plaintiff's Counsel accepted this case on a contingent fee basis and advanced all litigation costs. They not only invested time, but also paid significant expenses up front, including

11

the filing fee, service, and processing of produced data and creation of damages model. They will not be paid for any time during effectuation of the settlement. (Nilges Dec. at ¶ 16). "In doing so, Class Counsel assumed a real risk in taking on this case, preparing to invest time, effort, and money over a period of years with no guarantee of recovery. This factor weighs in favor of approving the requested fee award." *Ganci v. MBF Insp. Servs.*, S.D. Ohio No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645, at *19 (Dec. 3, 2019); *see also, Barnes*, 2019 U.S. Dist. LEXIS 65657, at *15 ("Class Counsel provided representation on a purely contingency fee basis, advancing all litigation costs and receiving no payment unless [and] until there was a recovery, and should be compensated for that risk"). *See also*, **Exhibit 3** at ¶ 3 (Current Plaintiffs "understand that Plaintiff's Counsel took this case on a contingent basis, which means that they covered all the costs so far and took the risk of receiving no compensation and losing all incurred expenses if a favorable result was not achieved.").

Courts in this district acknowledge that "[w]age-and-hour collective and class actions are, by their very nature, complicated and time-consuming." *Barnes*, 2019 U.S. Dist. LEXIS 65657, at *16. Given the inherent complexity of a wage and hour collective action and the disputed issues of fact and law in this case, an award of one-third of the settlement fund appropriately compensates Plaintiff's Counsel for their prosecution of this case and advances the public's interests in rewarding attorneys who bring wage and hour cases. *See, e.g., Gentrup v. Renovo Servs., LLC*, S.D. Ohio No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887, at *14 (June 24, 2011) ("society has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters."). An award of one-third (1/3) of the settlement fund is reasonable and still advances the public's interests in rewarding attorneys who bring wage and hour cases. *See, e.g., In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, 268 F. Supp. 2d at 930; and

*Gentrup v. Renovo Servs., LLC*, No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887, at *14 (S.D. Ohio June 24, 2011) ("society has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters.").

Defendant does not oppose the award of fees. (Agreement at ¶ 33). Accordingly, the Court should approve the requested attorneys' fees.

### 4. The Court should authorize reimbursement of costs.

Plaintiff's Counsel should also be reimbursed their litigation expenses, which are presently **$798.25**. (Nilges Dec. at ¶ 16). "Under the common fund doctrine, Class Counsel is entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of claims and in obtaining settlement." *Brandenburg*, 2019 U.S. Dist. LEXIS 204371 at *20. In fact, "[e]xpense awards are customary when litigants have created a common settlement fund for the benefit of a class." *Id*.

Expenses include filing fee, service of process, consultant fees, and postage. (Nilges Dec. at ¶ 17). Because Plaintiff's Counsel's litigation expenses were incurred in the prosecution of the claims in this case and in obtaining settlement, the Court should award reimbursement of these expenses to Plaintiff's Counsel. Defendant does not oppose the reimbursement of costs. (Agreement at ¶ 33).

## III. CONCLUSION.

The Parties submit that this settlement is a fair, reasonable, and adequate resolution of the disputed issues, which is consistent with the goal of securing the just, speedy, and inexpensive determination of every action. Accordingly, the Parties request that this Court: (1) enter the proposed Order Granting Joint Motion for Approval of Collective Action Settlement and Dismissal with Prejudice; (2) approve Plaintiff's Counsel's request for attorney fees and expenses; (3)

approve the requested service payments; and (4) retain jurisdiction to enforce the settlement, if necessary.

Respectfully submitted,

| **NILGES DRAHER LLC** | **REMINGER CO., L.P.A.** |
|---|---|
| */s/ Hans A. Nilges*<br>Hans A. Nilges (0076017)<br>7034 Braucher St NW, Suite B<br>North Canton, OH 44720<br>Telephone:   (330) 470-4428<br>Facsimile:    (330) 754-1430<br>Email:          hans@ohlaborlaw.com<br><br>*Attorney Plaintiffs* | */s/ David R. Hudson (with permission)*<br>David R. Hudson (0084988)<br>Clinton J. Wasserman (0084755)<br>One SeaGate, Suite 1600<br>Toledo, OH 43604<br>Telephone:   (419) 254-1311<br>Facsimile:    (419) 243-7830<br>Email:          dhudson@reminger.com<br>                     cwasserman@reminger.com<br><br>Hannah R. Duschl (0100681)<br>154 Columbus Avenue<br>Sandusky, OH 44870<br>Telephone:   (419) 609-1311<br>Facsimile:    (419) 626-4805<br>Email:          hduschl@reminger.com<br><br>*Attorneys for Defendant* |

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2024, the foregoing was filed electronically with the Court. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Hans A. Nilges*
*Attorney for Plaintiffs*
