# Exhibit 1

Collective Action Settlement Agreement and
Release and Exhibits

Docusign Envelope ID: 50004552-732D-4A89-8F63-766B56E46F66 58-9142C067FEF3

## COLLECTIVE ACTION SETTLEMENT AGREEMENT AND RELEASE

Subject to Court approval, Six Flags Entertainment Corporation as successor by merger to Cedar Fair, L.P. ("Defendant") and Tianna Shoemo-Flint ("Plaintiff") individually, and on behalf of the Eligible Settlement Participants (defined below), voluntarily enter into this Settlement Agreement and Release (this "Agreement") to settle all state and federal wage claims and issues as set forth more fully below. Plaintiff and Defendant will be collectively referred to as the "Parties".

## BACKGROUND AND RECITALS

1. Plaintiff filed this case, styled *Tianna Shoemo-Flint v. Cedar Fair, L.P.,* Case No. 3:22-cv-01113, in the United States District Court for the Northern District of Ohio on June 24, 2022 ("the Action"). In the Action, Plaintiff asserted collective and class action claims against Defendant on behalf of herself and others similarly situated under the Fair Labor Standards Act ("FLSA") and Article II § 34a of the Ohio Constitution. (ECF #1).

2. Plaintiff filed a First Amended Complaint in the Action on September 7, 2022. (ECF #8). Defendant moved to Strike the Class and Collective Action allegations on September 21, 2022, which was fully briefed. (ECF Nos. 10-12). The Court granted the Motion to Strike Class and Collective Action Allegations on June 28, 2023. (ECF #14).

3. On July 13, 2023, Plaintiff filed Permission for Leave to Appeal the Court's Order granting Defendant's Motion to Strike Class and Collective Action Allegations (the "Appeal"). The Appeal is still pending. (Appeal No. 23-0308).

4. Defendant denies Plaintiff's material allegations and denies liability for the claims asserted in the Action. (ECF #9).

5.      To avoid the burden, expense, risks and uncertainty of litigation, the Parties agreed to engage in settlement negotiations. (ECF # 21). The negotiations resulted in an agreement to settle this case on a collective basis (the "Settlement"). The terms of the Settlement are embodied herein.

6.      The purpose of this Agreement is to fully and finally settle all wage and hour claims Plaintiffs and any Claimants (as defined below) have or may have against Defendant, subject to Court approval.

7.      The Parties agree that this Agreement and Settlement do not constitute an adjudication on the merits of the Action, or any other matter released in this Agreement and that, accordingly, neither of the Parties shall be considered to have prevailed on the merits.

8.      The Parties agree to cooperate and take all steps necessary and appropriate to obtain approval of the Settlement, to effectuate all aspects of this Agreement, and to dismiss the Action with prejudice upon the Court's approval.

**DEFINITIONS**

9.      "Approval Date" means the date the Court approves this Settlement.

10.     "Approval Order" means the Court's Order approving this Settlement.

11.     "Claimant" means each Eligible Settlement Participant who completes, signs, and submits a valid and timely Claim Form. Plaintiff and Angel Hernandez are not required to submit a Claim Form to receive their Individual Settlement Payment or any other payment under this Agreement.

12.     "Claim Form" means the form approved by the Parties' Counsel, and subject to Court approval, that each Eligible Settlement Participant, except for Plaintiff and Angel Hernandez, must sign, complete in full, and timely submit within forty-five (45) days following

mailing of the Notice of Settlement to recover an Individual Settlement Payment. *Attached as* **Exhibit A**.

13.     "Court" means the United States District Court, Northern District of Ohio.

14.     "Covered Period" refers to the period from June 24, 2019 through the date of the Approval Order.

15.     "Defendant's Counsel" means David Hudson, Jorden Messmer and Clinton Wasserman of Reminger Co., L.P.A.

16.     "Eligible Settlement Participants" means the 111 current and former hourly, non-exempt servers employed by Defendant during the period of time from April 24, 2019 through December 30, 2022. A list of Eligible Settlement Participants is attached to this Agreement as **Exhibit B**.

17.     "Global Settlement Fund" means the gross settlement amount of $65,000.00. The Global Settlement Fund is the sole and maximum payment by the Defendant and includes (1) all Settlement Awards (defined below); (2) any Service Payments approved by the Court; (3) all Plaintiff's Counsel's attorneys' fees and litigation expenses approved by the Court; and (4) the Settlement Administrator's costs. In addition, Defendant will make all required employer contributions with respect to any portions of the Settlement Awards under Internal Revenue Service ("IRS") Form W-2, and these contributions are not included within the Global Settlement Fund.

18.     "Net Settlement Fund" means the amount available for individual Settlement Awards, after all deductions are taken from the Global Settlement Fund.

19.     "Notice of Settlement" means the form approved by the Parties' Counsel, and subject to Court approval, that will be sent to each Eligible Settlement Participant which will

explain this Settlement, the claims process and explains the formula for the allocation of the Net Settlement Fund. *Attached as* **Exhibit C**.

20.     "Plaintiff's Counsel" means Hans A. Nilges of Nilges Draher LLC.

21.     "Released Parties" means Defendant and all of its present and former parent companies, subsidiaries, related entities, shareholders, officers, directors, employees, agents, affiliates, representatives, attorneys, insurers, successors, and assigns, including but not limited to Six Flags Entertainment Corporation, and all of its related entities, as successors by merger to Cedar Fair, LP and all of its affiliated and related entities.

22.     "Settlement" means the Parties' resolution of the Action as to Plaintiff and the Claimants.

23.     "Settlement Administrator" means Analytics Consulting LLC.

24.     "Settlement Administrator Costs" means all settlement administration fees, expenses, and costs incurred by the Settlement Administrator directly or indirectly related to its duties under this Agreement, including but not limited to all fees, expenses, and costs in connection with the Global Settlement Fund and Net Settlement Fund, and those duties related to notice, check cutting and mailing, reports to counsel, court filings, legal and accounting advice relating to the establishment of the Net Settlement Fund and tax treatment and reporting of awards to Claimants, preparation of tax returns (and the taxes associated with such tax returns as defined below), calculating Settlement Awards, and any other related duties.

25.     "Settlement Award" means the amount of the Net Settlement Fund that will be paid to each Eligible Settlement Participant who becomes a Claimant, which shall be his or her pro rata share of the Net Settlement Fund based on the number of workweeks worked by the Claimant during the Covered Period in comparison to the total number of workweeks worked by all Eligible

Settlement Participants during the Covered Period. The minimum Settlement Award will be Twenty Dollars ($20.00).

26.     "Service Award" means the payments made from the Global Settlement Fund to Plaintiff and Angel Hernandez for their services in bringing and prosecuting the Action.

## DENIAL OF LIABILITY

27.     Defendant denies liability or wrongdoing of any kind associated with the claims alleged in the Action. Consequently, this Agreement is a compromise, and shall not be construed as an admission of liability, culpability, wrongdoing, or negligence by Defendant or the Released Parties, for any purpose, and under any circumstance. This Agreement, as well as the negotiations that occurred in connection with its creation, shall not constitute evidence with respect to any issue, or dispute, in any lawsuit, legal proceeding, or administrative proceeding, except for legal proceedings concerning the enforcement or interpretation of this Agreement. The Parties do not concede any claims or defenses that were, or could have been, raised in the Action; rather, they merely negotiated and reached a settlement to avoid further disputes and litigation and the attendant inconvenience and expense.

## DUTIES OF THE PARTIES TO COOPERATE TO OBTAIN COURT APPROVAL OF THE SETTLEMENT

28.     The Parties will fully cooperate with each other and use reasonable efforts, including all efforts contemplated by this Settlement and any other efforts ordered by the Court, to accomplish the terms of this Settlement, including but not limited to, executing such documents and taking such other action as may reasonably be necessary to obtain approval of this Settlement without material modifications and to implement its terms.

29.     Plaintiff may file an Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(2), if required by the Court.

30.     Within 14 days after the date this Agreement is fully executed, the date on which Plaintiff files the Amended Complaint, if applicable, or as otherwise ordered by the Court, the Parties will file a joint motion for approval of this Agreement and dismissal of the Action with prejudice.

31.     For purposes of this Settlement only, and without any admission of such, the Parties agree and will stipulate that Plaintiff and the Eligible Settlement Participants are similarly situated under 29 U.S.C. § 216(b).

32.     Within seven days of the Approval Date, Plaintiff will dismiss the Appeal.

## ATTORNEYS' FEES AND COSTS

33.     Plaintiff's Counsel will seek an order from the Court approving the payment of their fees for services, not to exceed one-third of the Global Settlement Fund, and for their litigation expenses. Defendant will not contest this application. Any attorneys' fees and litigation expenses approved by the Court will be paid from the Global Settlement Fund.

## SERVICE AWARD

34.     Plaintiffs' Counsel will seek an Order from the Court approving a Service Award for Plaintiff in the amount of $750, and a Service Award for Angel Hernandez in the amount of $500. Defendant will not contest this application. The Service Awards approved by the Court will be paid from the Global Settlement Fund. For tax purposes, the Parties agree the Service Award will be designated taxable, non-wage income paid under IRS Form 1099.

## SETTLEMENT ADMINISTRATOR'S DUTIES AND RESPONSIBILITIES

35.     The Parties agree to retain Analytics, LLC as the Settlement Administrator responsible for:

a. Establishing a Global Settlement Fund as a "Qualified Settlement Fund" within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended, the Treas. Reg. Section 1.468B-1, *et seq.*;

b. Issuing all funds from the Global Settlement Fund;

c. Determining and finalizing the Settlement Awards and the tax withholding amounts and employer payroll tax amounts for Claimants, as applicable;

d. Preparing, printing, and disseminating the Notice of Settlement to all Eligible Settlement Participants;

e. Processing and maintaining a record of all Eligible Settlement Participants that opt-in to the Settlement and reporting same to the Parties' Counsel;

f. Promptly apprising the Parties' Counsel of the activities of the Settlement Administrator, timely responding to inquiries of the Parties or their Counsel, and copying the Parties' Counsel on material correspondence;

g. Mailing Settlement Award checks to all Claimants;

h. Wiring Plaintiff's Counsel's attorneys' fees and litigation expenses;

i. Mailing the Service Award to Plaintiffs;

j. Reissuing and remailing Settlement Award checks to Claimants who do not receive or misplace their Settlement Award checks;

k. Mailing reminder postcards to Claimants who have not cashed their Settlement Award checks sixty (60) days before the check void date and again thirty (30) days before the check void date;

l. Issuing IRS Forms W-2, 1099, and W-9 (if required) for all payments to each Claimant;

m. Ascertaining current addresses for each Notice of Settlement and Settlement Award check returned as undeliverable;

n. Referring to the Parties' Counsel all inquiries by Eligible Settlement Participants the Settlement Administrator cannot resolve and/or which involve matters not within the Settlement Claim Administrator's duties specified in this Agreement;

o. Promptly notifying the Parties' Counsel of any material requests or communications made by any Eligible Settlement Participant who receives the Notice of Settlement;

p.   Maintaining adequate records of its activities, including the date of the mailing of the Notices of Settlement, receipt of returned mail, and other communications and attempted communications with Eligible Settlement Participants, and providing the Parties' Counsel with weekly reports regarding the same;

q.   Confirming, in writing to the Parties' Counsel its completion of the administration of this Settlement and retaining copies of all endorsed Settlement checks; and

r.   Such other tasks as customarily and regularly performed by a settlement administrator and as the Parties mutually agree.

## SETTLEMENT ADMINISTRATION TIMELINES

36.   Within seven (7) days of the Approval Date, the Settlement Administrator shall open an interest-bearing bank account, which will hold the Global Settlement Fund.

37.   Within fourteen (14) days of the Approval Date, Defendant shall provide the Settlement Administrator with an Excel spreadsheet listing the names, dates of employment, social security numbers, and last known addresses for the Eligible Settlement Participants during the Covered Period, as that information exists in Defendant's records. The Settlement Administrator shall attempt to confirm the accuracy of the Eligible Settlement Participants' addresses through the United States Post Office's National Change of Address database and shall mail the Notice of Settlement to any updated address obtained therefrom.

38.   Within fourteen (14) days after the Approval Date, Defendant shall wire the Global Settlement Fund to the Settlement Administrator to be deposited into the interest-bearing account opened by the Settlement Administrator.

39.   Within twenty-one (21) days of the Approval Date, the Settlement Administrator shall pay Plaintiff's Counsel's court-approved attorneys' fees and litigation expenses and the Service Awards from the interest-bearing account opened by the Settlement Administrator.

Docusign Envelope ID: 500045E2-772D-4A99-8F63-7666E6E46E66

40.     Within twenty-eight (28) days of the Approval Date, the Settlement Administrator shall mail to all Eligible Settlement Participants the Notice of Settlement, Claim Form, and an enclosed, postage-paid return envelope (the "Mailing Date"). If any Notice of Settlement is returned as undeliverable, the Settlement Administrator will promptly attempt to locate such Eligible Settlement Participant through other reasonable and legally acceptable means, and, if located, shall promptly mail an additional Notice of Settlement to such person.

41.     Each Eligible Settlement Participant shall have forty-five (45) days from the Mailing Date to submit their signed and completed Claim Form, and any such submission must be postmarked, e-mailed, or facsimiled on, or before, the forty-fifth (45th) day from the Mailing Date (the "Opt-In Deadline"). Plaintiffs are not required to submit a Claim Form to receive their Settlement Award checks or any other payment under this Agreement.

42.     Within fourteen (14) days of the Opt-In Deadline, the Settlement Administrator shall calculate and provide to Defendant's Counsel Defendant's required employer tax contributions with respect to any portions of the Settlement Awards treated as wages under Internal Revenue Service requirements (the "Employer Tax Contributions").

43.     Within twenty-one (21) days of the Opt-In Deadline, Defendant shall pay the Settlement Administrator the Employer Tax Contributions.

44.     Within twenty-eight (28) days of the Opt-In Deadline, the Settlement Administrator shall mail to Claimants their Settlement Awards (the "Award Mailing Date"). If possible, the Settlement Administrator will issue each Claimant one single check representing the total amount of their Settlement Award by combining the wage and non-wage portions of their Settlement Award.

Docusign Envelope ID: 500045E2-772D-4A99-8F63-7666E6E46E66

45.     The Settlement Administrator will provide the Parties' Counsel with a list of all of the Claimants and their Settlement Awards no later than seven (7) days after the Settlement Awards are mailed to Claimants.

46.     Within twenty-one (21) days of the Award Mailing Date, the Settlement Administrator shall return to Defendant any amount remaining in the interest-bearing bank account that was not paid out according to the terms of this Agreement.

47.     All Settlement Award checks that are not negotiated by a Claimant within one-hundred eighty (180) days of the date issuance or reissuance (the "Check Void Date"), as noted on the Settlement Award checks mailed by the Settlement Administrator to the Claimants, shall be null and void; the associated funds shall not be redistributed among the Claimants, any such funds shall belong to Defendant, and this Agreement shall remain binding on all of the Claimants.

48.     Any funds from the Global Settlement Fund that are not distributed under the terms of this Agreement shall not be redistributed among the Claimants, but shall belong to Defendant, and this Agreement shall remain binding on all of the Claimants.

## FILING THE CLAIM FORMS

49.     Defendant may, at its option, file with the Court a list of Claimants and their Claim Forms, within fourteen (14) days of the date that the Settlement Awards are mailed to the Claimants or as otherwise directed by the Court.

## GLOBAL SETTLEMENT FUND AND TAXES

50.     The Global Settlement Fund will be established as a "Qualified Settlement Fund" within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended, the Treas. Reg. Section 1.468B-1, et seq., and shall be administered by the Settlement Administrator, subject to the ultimate authority of the Court.

51.     The Settlement Administrator shall serve as Trustee of the Global Settlement Fund and shall act as a fiduciary with respect to the handling, management, and distribution of the Global Settlement Fund, including the handling of tax-related issues and payments. The Settlement Administrator shall act in a manner necessary to qualify the Global Settlement Fund as a Qualified Settlement Fund and to maintain that qualification. The Parties shall cooperate to ensure such treatment and shall not take a position in any filing or before any tax authority inconsistent with such treatment. The Parties agree to any relation-back election required to treat the Global Settlement Fund as a Qualified Settlement Fund from the earliest possible date.

52.     The Parties recognize the wage and non-wage awards to the Claimants will be subject to applicable tax withholding and reporting and employer payroll taxes. The Settlement Administrator shall calculate the employer's share of payroll taxes related to Settlement Award payments treated as wage income and, upon receipt of that calculation, Defendant will, as directed by the Settlement Administrator, deposit into the interest-bearing bank account opened by the Settlement Administrator a payment separate from the Global Settlement Fund to pay the employer's share of payroll taxes related to Settlement Award payments treated as wage income.

53.     All taxes (including any estimated taxes, interest, or penalties) arising with respect to the income earned by the Global Settlement Fund, if any, including any taxes or tax detriments that may be imposed on Defendant with respect to income earned for any period during which the Global Settlement Fund does not qualify as a "Qualified Settlement Fund" for federal and state income tax purposes (hereinafter "Settlement Fund Taxes"), and expenses and costs incurred in connection with the operation and implementation of this paragraph (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) any returns described herein or otherwise required to be filed

pursuant to applicable authorities) (hereinafter "Settlement Fund Tax Expenses") shall be paid out of the Global Settlement Fund. Further, Settlement Fund Taxes and Settlement Fund Tax Expenses shall be treated as a cost of the administration of the Global Settlement Fund. The Parties agree to cooperate with the Settlement Administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions set forth in this Section.

54.     The Settlement Administrator shall satisfy all federal, state, local, and other reporting requirements (including any applicable reporting with respect to attorneys' fees and other costs subject to reporting) and shall pay from the Global Settlement Fund any and all taxes, as well as any other obligations with respect to the payments or distributions not otherwise addressed in this Agreement.

## <u>TAX TREATMENT OF THE SETTLEMENT AWARDS</u>

55.     For tax purposes, the Parties agree Settlement Awards will be: (a) 50 percent taxable, wage income paid under IRS) Form W-2 and subject to ordinary payroll withholdings under federal and state law; and (b) 50 percent taxable, non-wage income paid under IRS Form 1099. Defendant will make all required employer contributions with respect to any portions of the Settlement Awards paid as wages under IRS Form W-2, and these contribution amounts will not be deducted from the Global Settlement Fund. Payments made from the Global Settlement Fund under this Agreement are not intended to, and will not form the basis for, nor shall they be considered wages for calculating or re-calculating additional contributions to, or benefits under, any benefit or compensation plans maintained by Defendant for the benefit of its employees and their beneficiaries.

## <u>RELEASE OF CLAIMS BY CLAIMANTS</u>

56.     Upon the Approval Date, and except as to such rights or claims as may be created by this Agreement, in exchange for the Settlement Awards and other good and valuable consideration provided pursuant to the terms of this Agreement, Plaintiff and the Claimants fully release and discharge  Six Flags Entertainment Corporation, and all of its related entities, as successors by merger to Cedar Fair, LP and all of its affiliated and related entities, and the Released Parties from any and all Released Claims as hereafter defined. The "Released Claims" shall consist of all wage and hour claims, including, but not limited to, any claims made under common law, and any claims under the Fair Labor Standards Act (29 U.S.C. § 201, et seq.), the Ohio Minimum Fair Wage Standards Act (Ohio R.C. 4111.01 et seq.), the Ohio Constitution, or any other analogous state or local laws, arising from employment with Defendant at any time during the Period of June 24, 2019 through the date of the Approval Order ("Released Period") but not limited to all claims asserted in this Action and any other claims for unpaid wages, unpaid minimum wage and overtime compensation, liquidated and treble damages, interest, attorneys' fees, and expenses through the Released Period. Neither Plaintiff nor any Claimant releases any claims for unemployment or workers' compensation, or any claims that cannot be released as a matter of law.

57.     Further, in consideration for the payment of their attorneys' fees and costs, Plaintiff and the Claimants hereby release all claims, causes of action, demands, damages, costs, rights, and liabilities of every nature and description for attorneys' fees, costs, and expenses against the Released Parties arising from or related to the Action, including in relation to any inquiry, research and settlement discussions they conducted and the Complaint.

## NOTICES

58.     All notices, requests, demands, and other communications required or permitted to be given pursuant to this Agreement shall be in writing and shall be delivered by email to Defendant's Counsel and Plaintiff's Counsel.

## CONSTRUCTION, INTERPRETATION AND MODIFICATION

59.     This Agreement constitutes the entire agreement between the Parties with respect to the subject matter included in this Agreement and it shall supersede all prior and contemporaneous negotiations between the parties. This Agreement shall be construed as a whole according to its fair meaning and intent, and not strictly for, or against, any party, regardless of who drafted, or who was principally responsible for drafting, this Agreement, or any specific term or condition in this Agreement. The Parties participated in the negotiation and drafting of this Agreement and had available to them the advice and assistance of independent counsel. As such, the Parties may not claim any ambiguity in this Agreement should be construed against another.

60.     If there is a conflict between this Agreement and any other document related to this Settlement, the Parties intend for this Agreement to control.

61.     Except as expressly provided herein, this Agreement has not been executed in reliance upon any other oral or written representations or terms, and no such extrinsic oral or written representations or terms shall modify, vary, or contradict its terms. The Parties agree this Agreement is to be construed according to its terms and it may not be varied, or contradicted, by extrinsic evidence.

62.     This Agreement shall be subject to, governed by, construed, enforced, and administered in accordance with the laws of the State of Ohio, and shall be subject to the continuing jurisdiction of the Court. The Parties agree that if either Party breaches any of the terms and

conditions of this Agreement, the non-breaching Party shall be entitled to reasonable attorneys' fees and expenses incurred in enforcing the terms and conditions contained herein.

63. If any provision of this Agreement, except the Release, is held by a court of competent jurisdiction to be void, voidable, unlawful, or unenforceable, the remaining portions of this Agreement will remain in full force and effect to the extent of this Agreement, as well as the obligations of the Parties, remains materially the same.

64. This Agreement may not be modified or amended, except in writing, signed by the Parties or their counsel, and as approved by the Court. This Agreement, any amendments or modifications to it, and any other documents required or contemplated to be executed in order to consummate this Agreement, may be executed by secure electronic means in one or more counterparts, each of which shall be deemed an original of this Agreement. All counterparts of any such document together shall constitute one and the same instrument. A photocopy, facsimile, or digital image of an executed counterpart shall be enforceable and admissible as an original.

65. This Agreement is binding upon, and shall inure to the benefit of, the Parties. Without limiting the foregoing, this Agreement specifically shall inure to the benefit the Released Parties; likewise, this Agreement shall be binding upon the Plaintiffs' and the Claimants' spouses, children, heirs, assigns, administrators, executors, beneficiaries, conservators, successors, and offspring.

## **CONTINUING JURISDICTION**

66. The Parties agree to move for the Court to retain continuing jurisdiction to construe, interpret, and enforce the provisions of this Agreement; to supervise the administration and distributions from the Global Settlement Fund; and to hear and adjudicate any dispute or litigation arising from, or related to, this Agreement, or issues of law and facts asserted in the Action.

## PARTIES' AUTHORITY

67.    The signatories to this Agreement represent that they are fully authorized to enter into this Settlement Agreement and bind the Parties. Plaintiff represents that her counsel has explained this Agreement to her, she fully understands this Agreement, and she is authorized to enter into this Settlement Agreement in both her individual and representative capacity. The Parties further agree that they have been encouraged to seek the advice of counsel concerning the potential tax implications of payments made pursuant to this Agreement.

**WHEREFORE,** having fully read and understood the terms of this Agreement, the Parties sign their names below with the intention that they shall be bound by it.

**SIX FLAGS ENTERTAINMENT CORPORATION, as successor by merger to CEDAR FAIR, L.P.**

By: _Brian Nurse_
EAE070147D4F472

Printed Name: Brian Nurse

Title: Chief Legal & Compliance Officer

Date Signed: 7/16/2024

**TIANNA SHOEMO-FLINT**

Date Signed: 07/15/2024

Docusign Envelope ID: 500045E2-772D-4A99-8F63-7666E6E46F66

# Exhibit A

## Claim Form

Docusign Envelope ID: 500045E2-772D-4A00-8F63-7666E6E46E66

**Shoemo-Flint v. Cedar Fair, L.P.**
**USDC ND Ohio, Case No. 3:22-cv-1113**

Claims Administrator



[NAME]
[ADDRESS]
[ADDRESS]
[PHONE NUMBER]

## CLAIM FORM AND RELEASE INSTRUCTIONS

**In order to receive any portion of the settlement funds described in the Notice of Settlement ("Notice"), you must sign, date, and return this Claim Form and Release to the Settlement Claims Administrator postmarked by _____2024.**

### CHANGES OF ADDRESS

It is **your responsibility** to keep a current address on file with the Settlement Claims Administrator. Please make sure to notify the Settlement Claims Administrator of any change of address.

## CLAIM FORM AND RELEASE

*THIS FORM MUST BE POST-MARKED OR OTHERWISE SUBMITTED TO THE SETTLEMENT CLAIMS ADMINISTRATOR NO LATER THAN [DATE].*

### I.   CONSENT TO JOIN

I understand that this lawsuit is being brought under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq*. ("FLSA"). Pursuant to 29 U.S.C. § 216(b), I hereby consent and agree to join the case of *Shoemo-Flint v. Cedar Fair, L.P.*, Case No. 3:22-cv-1113 (the "Action"). I consent and agree to be bound by any action by the Court. I further agree that the Plaintiff in the Action shall act as my agent and make all decisions on my behalf concerning the Action, including the settlement thereof.

I hereby designate the law firm of Nilges Draher LLC to represent me in this action.

### II.   RELEASE

My signature below constitutes a full and complete release and discharge of Cedar Fair, L.P. and all of its present and former parent companies, subsidiaries, related entities, shareholders, officers, directors, employees, agents, affiliates, representatives, attorneys, insurers, successors, and assigns (the "Released Parties") by me and by my spouse, children, heirs, assigns, administrators, executors, beneficiaries, conservators, successors, and offspring from all wage and hour claims, including any claims made under common law, and any claims under the FLSA, the Ohio Minimum Fair Wage Standards Act (Ohio R.C. 4111.01 *et seq*.),  the Ohio Constitution, unpaid minimum wage and overtime compensation, liquidated and treble damages, interest, attorneys' fees and expenses, or any other analogous state or local laws at any time during the Released Period, arising during the period of June 24, 2019 through [date of the Approval Order].

_____          _____
Full Legal Name (please print)                    Signature

_____          _____
Maiden or other names worked under           Street Address

_____          _____
E-mail Address                                          City, State and Zip Code

_____
Telephone Number

## EXHIBIT B

## ELIGIBLE SETTLEMENT PARTICIPANTS

Aaron, Stefan
Alexander, Tikyra
Anderson, Lesley
Ball, Makilee C
Barragan Molina, Jhojan C
Bemis, Derrick
Bennett,Ii, Dana
Berry, Satin
Blissit, Ashley
Bonica, Emily
Bowman, Blake A
Brown, Legend
Brown, Teura
Browning, Ciara R
Brunt, Haleigh E
Buck, Julie R
Butler, Leah
Capetillo, Vanessa L
Chaney, Melissa
Chong, Shi Yee
Chong, Shi Zhe
Clark, Scott E
Colson, Tre
Cook, Kiya
Coral Robalino, Santiago M
Craig, Dru
Creighton, Desiray
Darden, Dai
Dauch, Taylor
Delk, Dawn
Desrosiers, Alana
Dickey, Brittany
Egbert, Melissa K
Feasel, Randi L
Forney, Jazmine D
Galicia, Marissa
Garlock, Ashley N
Glass, Mariam R
Glass, Nick P
Goren, Gabrielle
Gruhlke, Kelley
Hamrick, Raymond A

Hansen, Christopher
Harper, Tia
Hartbarger, Jocelynn
Hawk, Andrea
Haynescrisp, Rochelle
Hemmer, Julia
Hernandez, Angel
Hudson, Aniyah
Hunter, Amber
Irby, Kya
Jackson, Annika R
Jauregui Molina, Alejandra A
Jimenez Palacio, Danna A
Jimenez, Guadalupe G
Johnson, Kayla
Jones, Alexis l
Jones, Anthony
Jones, Teonia M
Kelley, Luke T
Kisner, Mackenzie L
Kolke, Timothy
Lee, Jamal
leflore, Shi'Nija m
Lewis, Kayla
Linder, Seth
Lopez Araujo, Paula C
Loudy, Molly
Maschari, Barbara
Mcgill, Kindra N
Mcreynolds, Diamond
Meadows, Samantha A
Meyer, Meredith
Milks, Kiara D
Montey, Brittany
Moore, Donald
Morrison, Sharay
Mount, Michael E
Mundy, Courtney
Munevar, Natalia
Myers, Megan
Noble, Desmond
Norris, Tamika T

Docusign Envelope ID: 500045E2-772D-4A00-8F63-7666E6E46E66

North, Paige
Otto, Jennifer L
Pearson, Miah
Ransom, Ramona
Rector, John
Reiman, Kaylee M
Remache Condor, Stefy S
Reynolds, Shaquayla
Rodriguez Huertas, Stefannia
Roe, Desiree
Rojas Penarete, Francisco
Sahr, Morgan
Shoemo Flint, Tianna
Spears, Ashley
Spellman, Brian
Taylor, Ashlyn
Torres Cortes, Audury
Tye, Akiayah
Vazquez, Yolanda
Waddington, Margie
White, Joey C
White, Ryan
Wimbley, Diamond D
Woods, Ashley
Wright, Brandy
Yoder, Zoie
Zhou, Yi

# Exhibit C
Notice of Settlement

**NOTICE OF SETTLEMENT OF COLLECTIVE ACTION LAWSUIT**

AUTHORIZED BY MAGISTRATE JUDGE DARRELL A. CLAY OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

THE COURT'S AUTHORIZATION OF THIS NOTICE DOES NOT REFLECT THAT THE COURT HAS TAKEN A POSITION IN THIS MATTER

*Shoemo-Flint v. Cedar Fair, L.P.*
**USDC ND Ohio, Case No. 3:22-cv-1113**

**You are receiving this notice because you are a potential member of a collective action lawsuit and eligible to participate in the settlement of that lawsuit. This is not a solicitation from a lawyer.**

**This notice is being sent to: All current and former hourly, non-exempt servers who performed employed by for Cedar Fair, L.P. ("Defendant" or "Cedar Fair") during the period of time from April 24, 2019 through December 30, 2022.**

**You are receiving this Notice because Cedar Fair's records indicate that you fit this definition. This Notice advises you of the Court's approval of a settlement in the above-referenced case and tells you how to receive a share of the settlement funds. If you wish to be included in the settlement you must sign and return the enclosed Claim Form and Release by [DATE].**

**Your legal rights may be affected, and you have a choice to make now:**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **RETURN THE CLAIM FORM** | By returning a properly completed Claim Form and Release, you agree to participate in the settlement and will receive a settlement payment. To participate in the settlement, you must return a properly completed Claim Form and Release by [45 days from date of mailing]. If you participate in the settlement, you agree to be bound by the terms of the settlement, including the release of your wage and hour claims from April 24, 2019 through [date of approval]. |
| **DO NOT RETURN THE CLAIM FORM** | If you do not wish to participate in the settlement, you should not return the Claim Form and Release. If you do not return a properly completed Claim Form and Release by [45 days from date of mailing], you will not receive a settlement payment and you will not be bound by the terms of the settlement. |

BASIC INFORMATION

**1. Why did I get this notice?**

You have received this notice because Cedar Fair's records show that you fit the definition of persons entitled to receive this notice and to participate in the settlement of this lawsuit.

The Court ordered that you be sent this notice. This notice explains the lawsuit, the settlement, your legal rights, and what benefits are available to you.

The Court overseeing the lawsuit is the United States District Court for the Northern District of Ohio. The lawsuit is known as *Shoemo-Flint v. Cedar Fair, L.P.,* Case No. 3:22-cv-1113. The person who filed the lawsuit is called the "Plaintiff." Cedar Fair is referred to as the "Defendant."

**2. What is the lawsuit about?**

Plaintiff Tianna Shoemo-Flint, a former employee of Cedar Fair, brought this lawsuit alleging that Cedar Fair's failed to appropriately compensate it's servers for the non-tip producing side work, including time spent preparing food, cleaning, tasks related to restaurant opening and closing, and other miscellaneous tasks, related to the servers' tipped occupation while still being compensated at the tipped minimum wage. Cedar Fair denies the allegations in the lawsuit and maintains that its servers were paid for all compensable work time pursuant to the FLSA and Ohio state law.

**3. What is a collective action?**

In a collective action, a plaintiff files a lawsuit on behalf of themselves and other people who allegedly have similar claims. To be part of the collective action lawsuit, those people who allegedly have similar claims are required to affirmatively join the collective action. You can join this collective action and participate in the settlement by completing and returning the enclosed Claim Form and Release by [date 45 days from mailing of Notice].

**4. Why is there a settlement?**

The Court did not decide in favor of the Plaintiff or Cedar Fair and neither side prevailed. Instead, both sides agreed to settle this case to avoid the cost, time, and uncertainty of litigation. The Court has approved the Settlement. The Settlement does not mean that any law was broken or that Cedar Fair did anything wrong. Plaintiff and her attorneys think the Settlement is best for all potential members of the collective action lawsuit.

## 5. How do I know if I will be included in the settlement?

You will receive a settlement check if this notice was mailed to you, **and** you complete and return the enclosed Claim Form and Release by [date 45 days from mailing of Notice].

## 6. What does the settlement provide?

The maximum settlement amount that Defendant has agreed to pay is $65,000.00. This amount includes Plaintiff's attorneys' fees and litigation expenses, a service payment for the Plaintiff, the costs of settlement administration, and settlement payments to persons who receive this notice and return the completed Claim Form and Release by [date 45 days from mailing of Notice].

## 7. How will my payment be calculated?

Settlement payments to those who participate in the settlement will be calculated based on a formula that has been approved by the Court as fair and reasonable. Under this formula, those who participate in the settlement will receive a settlement payment equal to their *pro rata* share of the Net Settlement Amount based on the number of workweeks worked by the Claimant during the Covered Period in comparison to the total number of workweeks worked by all Eligible Settlement Participants during the Covered Period of time. The Net Settlement Fund is defined as the maximum settlement amount, less all court-approved attorneys' fees, litigation expenses, service payment to Plaintiff, and the costs of settlement administration.

Your estimated settlement amount is $[INCLUDE]

Half of your settlement payment is subject to deductions for applicable taxes and withholdings like any other paycheck, and for which you will receive an IRS Form W-2. The other half will have no deduction taken and will be reported on an IRS Form 1099.

## 8. How can I get my payment?

To get your payment, you must fully complete the enclosed Claim Form and Release and mail it to the Claims Administrator in the enclosed envelope postmarked no later than [45 days from date of mailing]. You may also e-mail or fax the Claim Form and Release to the Settlement Claims Administrator, so that it is received no later than [45 days from date of mailing]. The Settlement Claims Administrator's complete contact information is:

[Claims Administrator to insert]

## 9. When will I get my payment?

If you return a signed Claim Form and Release in a timely manner, you will be sent a check on or around [insert check mailing date]. This date is subject to change. Please be patient. **Checks will become null and void after 180 days of their issuance.**

**10. What am I giving up if I sign the Claim Form and Release to get a payment?**

By returning the Claim Form and Release, you cannot sue, continue to sue, or be a party in any other lawsuit against Cedar Fair relating to any federal, state or local wage and hour claims during the time period covered by the Settlement.

**11. Do I have a lawyer in this case?**

Upon signing and returning the Claim Form and Release, you will be consenting to join this case and you will be designating the law firm of Nilges Draher LLC to represent you. These lawyers are called "Plaintiff's Counsel." You can find more information about Plaintiff's Counsel at http://www.ohlaborlaw.com/.

**12. How will the lawyers be paid?**

The Court has approved payment of $21,666.67, or one-third (1/3) of the total settlement amount, for attorneys' fees, plus actual out-of-pocket costs.

**13. How do I get more information?**

If you have other questions about the settlement, you can contact Plaintiff's Counsel at the telephone number or email below.

**Nilges Draher LLC**
(234) 401-9089
notice@ohlaborlaw.com

DATED: _____, 2024